Good afternoon, everyone. We will call our first case, which is In Re Community Bank of Northern Virginia Mortgage Lending Practices Litigation, PNC Bank and a successor to CBNV as the appellant and Mr. Bryce. Good afternoon, Your Honors. Martin Bryce for Defendant Appellant Community Bank. I'd like to start by reserving three minutes. That request will be granted. Thank you, Your Honor. This appeal presents a class that should have never been certified under longstanding precedent of both this court and the United States Supreme Court. Well, that's not what you were saying twice before when you came up here. I should say you, Mr. Bryce, I don't know who was representing the folks in the last two times this was up here, but unless I'm mistaken, as your colleagues on the other side point out, the last couple times this was up, you were assuring the court that everything was great. This class ought to be certified. The settlement ought to be approved. Let's get it done. So, other than the fact that they're now raising claims you don't like, what's changed? Well, Your Honor, three of the four defendants, including the principal defendant in this action, RFC, that was a party to that settlement, have gone out of business and are now out of this case. I'm not sure how that changes. You mean you disagreed before, but you were silent? No, I wouldn't say that, Judge Greenaway. Like in any settlement, class or otherwise, a judgment was made that the matter should be settled, and that was, of course, subject to ultimately the approval of the district court and this court. This court, twice over the 15-year history of this case, declined to approve that settlement, and the parties entered into litigation. You also reserved your right to object in the future. Well, thank you, Judge Fischer. I was just going to say that. In Community Bank 1 and 2, this court expressly recognized that we maintained that right. The settlement agreement in multiple places granted us that right, and the matter didn't settle after the second remand. I'm not suggesting that you're bound or in some fashion subject to a judicial estoppel. I'm trying to find out, since you stand up and say so emphatically it should never, ever have been certified in the first place, how you square that with coming to court and saying this is a good class. At least as to the numerosity and the superiority and typicality pieces that are at the back end of your brief, what's different now than was apparent at the time you were pressing for certification and settlement? Judge Jordan, the laws changed. At the time this court decided Community Bank 2, at the time this court, nor we had the benefit of the Wal-Mart decision, the Comcast decision from the Supreme Court. This court's subsequent decisions in Verre, Carrera, and Marcus, as numerous courts have recognized, and we cite them in our brief, the law with respect to class certification has changed, and the class in this case cannot be squared with that law. The elements of Rule 23 simply cannot be satisfied as this case is presented. Now let's go to your, I'll call it your first point, it might not be your first point, but you argue that the conflict of interest exists under the argument of adequacy of representation, I take it, because there are differences between, potential differences between the claims with some of the parties of the subclasses. But typically, wouldn't the adequacy of representation argument be something that the plaintiff or the objectors would raise at a stage of either certification for settlement or certification for litigation? What's that issue to you? What does that mean to you? We just don't argue that, Judge Fischer. This court squarely held that in Community Bank 2. We did. Did we do it in Victor? Did we do it in law of the case? How did we do it? Well frankly, Your Honor, that was the only contested holding of Community Bank 2. It's the only holding of that case that is in fact not Victor. I would say squarely, not to argue the other side's case, but I mean when it was Community Bank 2, there were no subclasses. Now we have a class that's been certified with subclasses. Correct, Judge Fischer. This court held there was a fundamental conflict under Ortiz, a U.S. Supreme Court decision, and this court's decision in Dewey, when you've got a fundamental conflict and subclasses, you have to have the subclasses represented by independent counsel. Really? That's not what Dewey says. And it's not even what Ortiz says. You know, you quote Ortiz and you've lifted a prepositional phrase out of Ortiz, and I was a little surprised by that because the only part of Ortiz you quote is, with separate representation to the Supreme Court is talking about a very specific kind of class action involving present and future claim holders, involving physical injuries, the claim is not yet born, and how there is something inherent and problematic there. Where do you get the notion that that prepositional phrase applies to all classes and all subclasses across all potential kinds of class actions? It doesn't necessarily apply to all subclasses across all class actions, Judge Jordan. What it applies to are fundamental conflicts. So what's the fundamental conflict here? The district court specifically said, now that there are subclasses, the conflict that the Third Circuit pointed to twice, which was the issue with respect to equitable tolling or not and whether you could bring these Tyler Hopa claims or not, is resolved because those are temporal issues that the subclasses resolve. How is Judge Schwab in error in assessing the current state of the pointing ground given that there are subclasses? A couple of points, Judge Jordan. Number one, in Community Bank 2, this court expressly held, and I'll quote, experienced teachers that it is counsel for the class representative and not the named parties who direct and manage class actions. Every experienced federal judge knows that any statements to the contrary are sheer sophistry. By creating subclasses and not appointing separate counsel for those subclasses, when this court held there was a fundamental conflict, solves at most half the problem. You've got to answer my question if you can. What is the nature of the fundamental conflict now that there are subclasses? There was a fundamental conflict before. The court pointed out and said, you can't say we're not bringing these Tyler Hopa claims because they're not viable when they might be viable for a third of the class. You can't do that. That issue by creating subclasses is, according to your opponents, off the table, and the district court accepted that. How is that fundamental conflict we identified before still in play once there are subclasses? Because again, you still have two different groups who are in a fundamentally different position. The untimely, if I can refer to it that way, subclass still has what this court described as the substantial hurdle of satisfying the requirements of those antagonists Fundamental conflicts, as I understand them. We gave a definition of fundamental conflicts and it's where one piece of the class can't win without another piece of the class losing. How is that true now that there are subclasses? How does it mean that the people who don't have to rely on equitable tolling are going to lose if the people who do have to rely on equitable tolling win, or vice versa? That's one definition, Judge Jordan. In Dewey, this court also said a fundamental conflict is any conflict that touches the specific issues in the case. Equitable tolling goes to the heart of one of the very specific issues in this case. There always remains the possibility of settlement. Frankly, after the district court certified the class here, the district court sent us to mediation. I don't think you're getting to the heart of the matter. I thought that there were really two issues under the adequacy of representation. There was one question with regard to counsel and another question with regard to essentially the formation of the subclasses. So the first question is, let's put counsel aside. I know you've alluded to Judge Fortes' quote from the court. The formation of the five subclasses, is there anything that creates a fundamental conflict as between each of the subclasses? Now, you'd agree that there's no conflict with the RICO class, right? I mean, that's a defined subclass. So now there are no class representatives that are overlapping because there's only one of the remaining four that is named in the RICO. So what's, just putting aside counsel and just looking at the five subclasses, what's the fundamental conflict that we have that requires us to reverse the district court? The fundamental conflict, Judge Greenaway, is the one subclass has to satisfy equitable tolling. The other doesn't. Judgments have to be made on the part of counsel as to how their resources are going to be spent, how the court's resources are going to be spent, whether or not to... So it's not the class. So then it's not the subclass itself, it's counsel. Yes. And is that your only argument now? Yes. The argument is very straightforward. Under the law, where there's a fundamental conflict, A, there have to be subclasses and B, the subclasses have to have separate counsel. So that separate counsel can make independent judgments. What case says that subclasses have to have separate counsel? Well, I would cite both Dewey and Ortiz. If there's a fundamental conflict. Correct. And this court held there's a fundamental conflict. That much is the case. Again, as I think all three of us have said and clearly alluded to, there's a distinction between the posture of this case when it was before the court the second time and where it is today because of the existence of subclasses. Correct, Judge Fischer, but nothing in Community Bank I or II limited the holdings to a settlement posture, the possibility of settlement, or even simply whether to enter into settlement talks. They relied on the fact that that was a limited settlement fund and that was part of what created, in the analysis of I and II, the conflict. Here, that's now off the table with the creation of the subclasses. The real question I have is, if you're saying that the conflict that we have to be cognizant of and rely upon in order to rule the way in which you'd like is based on class counsel and the inability of one set of class counsel to represent all of the five subclasses, what is that based on? It can't be based on the line that you read us a few moments ago from Dewey, because at best that's dicta. What else are you relying on? Again, I point you to what this court said in Community Bank II, that the driver of the car, so to speak, aren't the class representatives, aren't the absent class members, but are class counsel. I'm not sure how that gets to the point. If there's no conflict between the classes and the classes don't care, why should we care? You haven't identified, I think you've actually acknowledged there is no fundamental conflict between the several subclasses, which is good because we suggested the subclasses. I think that goes back to my original point of why should you care? Right. What is it to you, and more importantly, what should it be to us? If the subclasses are satisfied and the classes themselves don't conflict, and the district court in its discretion said I think these folks can handle it, what's the problem? The problem, Your Honor, Judge Jordan, is this court squarely held there's a fundamental conflict, and under the law, that is just... We said there was a fundamental conflict before there were subclasses. Now there are subclasses. You've acknowledged that there's not a conflict between the subclasses. Your assertion has been and continues to be, but look, it's the same lawyers, and I guess we're just kind of traveling in a circle. To be clear, Judge Jordan, our position is the fundamental conflict between the subclasses is only solved by A, the creation of the subclasses, and B, the subclasses being represented by their own independent counsel. Where do you get that? Where in the law do you get it that there has to be separate counsel? Can't be Ortiz because Ortiz is easily distinguishable on the basis I've just noted. It's not coming out of Dewey because Dewey, again, is pinned on a fundamental conflict, which for purposes of our discussion, you might want to say you don't bootstrap yourself into a fundamental conflict by going back to the lawyers. The subclasses don't have the problem. So where in the law do you find any authority for the proposition that subclasses must always be represented by separate counsel? Well, again, Judge Jordan, subclasses must not always be represented by separate counsel. They only need separate counsel when there's a fundamental conflict, which this court held and under the law, and I would cite Dewey, I would cite Ortiz, and I'd cite Community Dine, too, for that proposition. Mr. Bryce, we'll have you back on rebuttal. We have some additional questions. Thank you, Judge Fisher. The other side. Mr. Carlson? Correct, Your Honors. Good afternoon. Bruce Carlson from Carlson Lynch Suite in Coppella in Pittsburgh on behalf of plaintiffs and the class. I'm going to use my time, seven minutes, to speak to the certification of the rest of the claim. First I'd like to correct kind of a factual misnomer, a false premise, if you would, with respect to the adequacy issue, and that is that there's a critical distinction between the posture of the case as it stands today, as contrasted when it came up on CBN v. 1 and CBN v. 2, and that is today, as contrasted to those prior decisions, there is no distinction with respect to the respite class. There's not a conflict where some of the members need equitable tolling and others do not. All of the members of the respite class are dependent upon equitable tolling in order to assert a claim. Well, I suppose the argument on the other side is that if you look, whether you look solely at respite or all five, that it's impossible for one set of counsel to represent all of those disparate interests, and what I was trying to get was why. Well, I don't think that there are disparate interests here, Your Honor, because as this court noted in CBN v. 1 and 2, the interest was that you had two different universes of class members, one that was dependent upon equitable tolling and one that was not, and it was that dichotomy that created the potential conflict. That factual backdrop does not exist today, at least with respect to the respite claim. Let me turn you to, of course, you're dealing with respite. Go ahead. I had a predominance question more about Tila and Hopeless. I have a management question that cuts across. Let me ask you. They argue, as I understand it, that they have been deprived of the opportunity to take discovery pertinent to the question of class certification, and it's fundamentally unfair for this to go forward without them having that opportunity. Why are they wrong about that? Well, I would say two things, Your Honor. Number one, discovery has now occurred. Now, it had not occurred by the time we came up on the 23F appeal, but I think that the claims are so clear here, and when you look at the issue of rigorous analysis, it's a contextual question, and this is an unusually postured case, as I think the court would agree, in that we've been up two times prior, and the court has looked at the claims, and the claims are so straightforward and so dependent upon comment. Well, so straightforward, really? Because if they were really that straightforward, would we be on round three right now? Well, we did what the Third Circuit suggested on the second remand. Actually, we suggested it on the first remand, right? We did. You did. But go ahead. But so, with respect to the respite claim, it's an archetypical consumer claim that it's hard to conceive of a claim that is more readily certifiable. Now, they make these arguments about problems, and I guess this cuts across several of the claims, perhaps, that some folks are in bankruptcy, the actual holder here, who's got a real stake. These things make it difficult, maybe impossible, to handle stuff on a class-wide basis. There's a bunch of stuff that is going to require individual attention. Is there a flaw in that? Yes. I would say two things with respect to the bankruptcy issue. Number one, there is clearly a substantial universe of class members that does not have that issue at all. Number two, with respect to those that have filed for bankruptcy, they're clearly ascertainable that's not an issue. The question is, to what extent are you permitted to engage in a task that requires some administrative work to identify that discrete group of class members? Yeah. Well, I'm sure that Mr. Bryce will frame the question himself, but I understand them to be saying, in effect, at a certain point, saying that it just takes a little bit of work here and a little bit of work there means you've got a whole lot of work and it's really not a superior means of dealing with the case. You can argue on predominance or superiority grounds and say, we've got problems. Yeah. We would not agree with that position, Your Honor. I mean, at a minimum, you have, as I said, a universe of class members who do not have that issue at all. So it's only with this- But how do you find that out? That's a simple administrative inquiry with respect to who has actually filed for bankruptcy. Let me go back to what I was going to ask you. The question of predominance, and the other side argues that the district court, Judge Schwab, did not perform a rigorous and independent analysis, particularly in the predominance area. And how do you answer that his dealing with predominance was rather perfunctory? I would suggest this, Your Honor. I think, again, in the context of what constitutes a rigorous analysis, that's a context-specific inquiry. Here, you have a very unusual context in that twice before, this court suggested that the claims could be certified and that predominance- But wasn't that dicta? I don't believe it was dicta. Whether you call it dicta or not, I think it was pretty clear guidance to the court on remand. The guidance doesn't give up the obligation to engage in the analysis. I mean, we give guidance in a lot of cases, but that doesn't relieve the district court upon remand from engaging in a thorough and robust analysis in whatever it is that we've remanded. You're not suggesting that, are you? I'm not. I would suggest that, in an ideal world, we would have had a more fulsome record when we were in the trial court. But you have a one-line record here. You know, hey, the Third Circuit thought so, so I guess I'm there, too. Well, I think that's a little bit of an overstatement. We didn't have full-blown discovery. You did have it amounts to slightly more than one page in the district court's analysis, slightly more than one page. So one line might be a bit of an exaggeration, but not much. He basically says, the Third Circuit noted that all claims arise from the same alleged fraudulent scheme. That seems to be pretty much it. Why is that enough? Well, he said more than that. He talked also about the extent to which he reviewed the extensive written discovery and the extensive briefing in connection with the motion to dismiss and other issues that had been briefed before the trial. But going to the merits, perhaps, of what the district court determined, even if you can, and in your brief you argue that concealment can be proven by the mere processes that were in place, but the question of due diligence as to whether or not the respective plaintiffs were duly diligent, doesn't that take individual proof and doesn't that predominate over the common proof? I would suggest no, Your Honor, and I would suggest further... How do you get around that? How do you get around the individual proof? Here's the issue, Your Honor. If you cannot establish due diligence on a class basis in this case, you cannot do it in any case. Maybe you can. Because here's what happened with these class members in the context of the respite claim. You had a business model, which was an illegal business model. The very premise of the model was to mislead the borrowers with these false HUD-1 mortgage settlement forms so that in the context of the mortgage closing, you have an indication that all this money is being paid to the community back in Northern Virginia, when in reality all of the money is being by contract and by design, is not performing any settlement services. So because of that deception at the threshold of the transaction, and in the context of a transaction that is calculated as supposed to cause transparency, the borrower has no ability to ascertain whether the money was actually funneled or paid to the entity that's indicated on the HUD-1 form. So you're saying due diligence is context specific? It is context specific, and I don't think under any reasonable standard that a consumer could be expected to be a forensic accountant and to track down where the money actually was paid. I think that's an unreasonable position, and I think it's an objective standard. Mr. Carlson, let me ask you this question as you wrap up. To the point that we spend most of the time with Mr. Bryce on whether or not there's a fundamental conflict between counsel, there's two of you here who have merged together. Mr. Waters represented the Thompson Objectors in the first two cases, now you're working together. Why can't you represent one group of classes and Mr. Waters represent another group of classes and do away with that fundamental conflict question? What am I missing here? Pragmatically, there's nothing to preclude that. We don't think it's necessary because we don't think there is a conflict. But certainly mechanically, there's nothing to preclude that. So it's, you know, we've said to them what do they care, but I guess the flip side of that is what's the big issue here? Wouldn't that take at least one of the claims away and allow this case to proceed forward quicker? It would, and that's something that we would be amenable to, Your Honor. Okay. All right. We'll hear from Mr. Waters. Mr. Walters, I'm sorry. I guess I look at you and I know another Roy F. Walters in Pittsburgh, and it just didn't seem right that I knew you weren't him, so I was shortening your name. So, Your Honor. Also an attorney. Roy F. Walters is an attorney, Your Honor. I think I even have a son who's one, so. Let me speak to the adequacy issue, which I think has engrossed a lot of the questions. Would you do me a favor, please? Could you just respond to what your co-counsel just said? With respect to the representation of separate classes? Yeah. Well, we don't have a problem with that. We have, that's certainly acceptable to us. So you'd split the five among you? Well, we could do that, except in splitting those five among us, we would still, if there is a fundamental conflict, the fact that he would take the RESPA classes, we would take the HOPA-TILA, and then somebody else would take the RICO classes. If, in fact, there is a HOPA-TILA, I mean, a fundamental conflict, that would still exist, because we've already represented all of them when we came to this court. So I don't think that, practically speaking, we could do that, but I don't think if there is that problem, that wouldn't solve it. In fact, there is no fundamental conflict here. Community Bank 2 set the two things, the two reasons, the fundamental conflict, the other one is that you align interest. When you look at your Dewey case, you talk about alignment of interest as a proxy for determining whether there is a conflict or not. In the Dewey case, there clearly was, that was a limited settlement fund, and a case where the conflict was between two classes, and where you draw the line about how they allocate a settlement fund. We don't have any settlement now, there's no limited fund, there's no allocation issue, there is no fundamental conflict, and as this court has noted, it is a bit curious that the defendants would raise a complaint about this as opposed to objectors. I don't see why they would really care. Well, whether it makes sense for them to care or not, they're entitled to raise a point, right? You're not suggesting that they don't, in some fashion, have standing to say, hey, this aspect of Rule 23 hasn't been met, are you? I do not, Your Honor. They can complain, but in fact, they rattle chains behind every door here in this appellate brief, as they have for the last 13 years, so yes, they can raise that. But it's a meritless argument at this point in time. We've done two things to cure the fundamental conflict that was identified in Community Bank 1 and 2. One, we now have class representatives on both sides of the equitable tolling issue, those who are timely and those who are not. We have, two, asserted the Hope Attila claims, which is one of the reasons they were critical of counsel before, and three, we have subclasses, which is one of the things that Community Bank 1 and 2 each suggested. There is no fundamental conflict. The recent case we cited to you out of the Southern District of California District Court case, there is. Go ahead, Your Honor. No, no, the Trump case, right? We're familiar. Yeah, the Trump cases. Maybe I could get you to speak for a moment about something that your opponents have pressed pretty hard, which is that there is, when you get past certain adequacy representation issues, and you get into other requirements for Rule 23, there are deep problems, because individually, how do you know, not just due diligence, but how do you know that we're going to be able to handle damages issues, which will be very individualized on a class-wide basis? The District Court didn't address that appropriately, just said, in effect, we'll think about that later. What's your response to that? If you're talking about damages issues, Your Honor, those are easily resolvable. In fact, we suggested to you... No, it's a mechanical... the measure of damages in this case is a mathematical calculation, really, an addition of damages. The damages consist of, in essence, two kinds of damages. One are the Section 800 fees paid to CB&V on the RESPA and HOPA-TILA claims. That's one element of damages. You find those damages just by looking at the HUD-1s. Those particular fees are right on the HUD-1s. All you have to do is sum those up. You have a database. You enter all the HUD-1s. You add those up, and you have the damages. We've done that in another case, Your Honor. We tried a case in 2007 and 2008 in Missouri where that element of damages, the fees, was tried for a class, and it wasn't a big problem. Actually, RFC no longer defended that in this case. It was a defendant in that case. The second element of damages is the... in the HOPA-TILA claims, the second element of the damages is the finance charge or the interest, if you will, that were paid on the loan. That also, the servicers for these loans have an accumulation that shows the amount of interest paid. It's an easy task to do that. That same element of damages was also present in the Mitchell case that we tried in 2007 and 2008 against RFC, and we found that from the loan payment histories, you can find the amount of interest paid on the loan. You sum it up, and you've got class-wide damages. Those two elements of damages, the fees and the interest paid, are easily calculable on a class-wide basis. Now, what we asked the court to do because of that was... I'm sorry. Go ahead. Somebody had a question. No, what we asked the court to do on account of that... Finish your thought. I'm listening. Oh, okay. No, I was done. I'm about... Oh, you're done? Okay. If you're done, I wanted to ask you about predominance and raise with you the question that we raised with your counsel. I have a little bit of a hearing impairment. Could you speak up for me, please? I'm sorry. Predominance? Yes. Thank you, Robert. So I wanted to talk about that, particularly given the fact that the district court did not seem to have much to say about it. Is the state of the record such that we have to send that back? Your Honor, I don't believe so. If you look at Community Bank 1 and Community Bank 2, there are specific indications in there where the appellate court previously, the Third Circuit said that they thought that the common issues predominated, and you should go ahead. They've twice been up here with settlement classes, and both times they said that they predominated. The only major difference between a class settlement class, which has been up here twice, and a litigation class is manageability. And Judge Schwab did spend some time in his opinion addressing manageability. He defers in his opinion to the superiority or the predominance requirement in his opinion, and he refers and defers, as you say, to the Community Bank opinions. But they said it predominated. Could you look at those Community Bank opinions and come to the conclusion, other than that the reference to predominance in them was dicta? I mean, they're very short references. Well, they are very short references. A line or two, maybe? Those were very long opinions and very sophisticated opinions, and the statement in there that they predominated, I think, indicated a full understanding of these claims. It was a rigorous and independent analysis. That was the first time around, not the second time around. Your Honor, if you look, and I think Mr. Carlson's... The first time around. The first time around. Okay. I mean, but was it really rigorous and independently done? Mr. Carlson's comments, I think, about you have to understand and look at this case, it's a bit unusual, and you have to take it contextually. If you look at it contextually, here's what we see. We see at the first, the first settlement approved by Judge Lancaster comes up to the Third Circuit and it was analyzed in a very long opinion by Judge Sloviter. Comes back, remanded. Judge Lancaster then holds and directs us to engage in viability briefing. We literally file hundreds of pages of briefing on the viability. The analysis and the rigorous analysis in those viability briefings is in the record. It's there. It's reviewable. Judge Schwab said he saw it. After that viability briefing, he then approves a second class settlement, up the ante a little bit. Comes back up here to Third Circuit, says again, well, it looks like these are properly certifiable, but we've got the same problems we had before. Plus, you probably used, when you booted the Hopatila claims, you probably used the 12B6 when you should have been using the Rule 23 standard. So that's the second time by the Third Circuit. So we've had this case. And then it comes back the second time. Judge Schwab then rigorously analyzes a motion to dismiss filed by PNC, and they attack every one of our claims in those motions to dismiss, and he finds, yeah, they're viable. He does shave a few off, and he boots the FDIC as a receiver for GD&T. Then he approves. In all this going up and down, you have one line in a 52-page, I don't remember the exact number. They're long. Community. It was long. Brother Abel went on a little bit. But there was one line on predominance. Your Honor, to answer your question, if the court does not believe the previous two Third Circuit opinions and the underlying opinion by Schwab and the other two opinions twice by Judge Lancaster do not adequately address rigorously enough predominance, then to answer your question, yes, they're probably the right solutions. To send it back and ask them to do what the Third Circuit says hasn't been yet done, that is, analyze predominance for us in a rigorous manner if that's what the court believes. But we think you don't need to do that. But if that's what you believe, then that's the solution. Can I ask a question that my colleagues will indulge me? One thing that I have wanted to get a response from the plaintiff's perspective on is the argument that PNC is making that the whole equitable tolling issue revolves around highly individualized decisions and that one of those individualized issues is fraudulent concealment. And your assertion, well, let me frame it this way. They seem to be saying that the argument you're making would nullify statute of limitations in these kinds of cases. That by arguing that the fraudulent concealment is baked into the documents, you really create a cause of action as to which there is no statute of limitations, and that can't be the law. So what's wrong with the pitch they're making to us on that? Well, actually, Your Honor, I don't think that is the case. And the answer to that is that the defendants always have at their disposal a remedy to start the statute of limitations, and that is to properly disclose what they lied about before. They could do that. They choose not to. How does that answer the question? Because obviously, from their angle, their argument will be we are not lying, we are not dissembling, we are not dissenting the other. So what is there for us to disclose? Your argument is there is, and eventually perhaps that gets in front of a fact finder, whether there is some fraud going on or not. But how can it be the case that there is a claim as to which you don't need an independent act of concealment because it's all baked in and not have the statute of limitations problem they've described? Well, let me give you two answers to that. One, we do have independent acts, as we've described in our brief, separate and apart from the violative acts that we talk about. But the choice between... Other than the HUD-1 itself, is there something else you're relying on? Because I understood your briefing to say it's in the HUD-1, the fact that they represent certain things in the HUD-1, the issuance of the HUD-1, that's the independent act you're pointing to, right? They issued the HUD-1 and made misstatements in the HUD-1 that the law says are material, and the law accepted the material, and the federal government requires them, obviously. And that's what you're relying on. There's not some other thing you're relying on, is there? Those are the primary places that we have for reliance. Okay, so go ahead. To answer your question about their complaint that the statute never runs, the answer to that, I think, from a policy standpoint is, who do you want to favor, a misrepresenter, a liar and a cheat, or an innocent party who hasn't been properly advised of what the misrepresentation is about? And in that situation, if the statute continues to run, that's an easy choice for me. I think it should be an easy choice for this court. That is, it doesn't begin to run. So the notion that there should be indefinite tolling is okay? That's the position that plays out? It would be my position that that's okay, yes. Aren't you really arguing a discovery rule? Could be. Well, not really. It's really a different question here. You're not pausing the discovery rule answer. All right, I hear it. All right, Mr. Waters, we thank you. Thank you, Alex. That's both counsel, and we'll hear back from Mr. Bryce. Mr. Bryce, what I'd like to ask you is on this predominance question. Both counsel, in essence, argued that you can't just look at the couple words that were in the CB NV2. You should need to look at this whole record when you're trying to answer the question whether there was a rigorous and independent evaluation of the question of predominance. If we sent this back, what else is the district court to do? Well, Judge Fischer, Mr. Waters and I agree on one thing, and there's no reason to send this back because on this record, it's very clear that a class can't be certified, and here's why. First, let me deal with equitable tolling. Number one, due diligence. This court most recently made it plain that that's a requirement in Riddle. Riddle, although non-precedential, was based on both Matthews and Settle, two precedential decisions of this court. In all three, this court said plain that you simply can't take a defendant's word for it. You can't look at the loan document or whatever other document it is, assume or take and express a valance of legitimacy and end it. You've got to ask questions, and if you've got to ask questions, that's individualized. So you don't want us to send this back. You want us to find as a matter of law that the individual claims predominance. Absolutely. And you want us to do it on the basis of a non-precedential opinion? No, Judge Jordan. Riddle was non-precedential because the law is so well settled. Both Matthews and Settle, which held the exact same thing as Riddle, were precedential decisions, holding that a plaintiff has got to ask questions. Now, Mr. Carlson says they couldn't have found anything out. Well, they didn't even want to find out whether or not any questions were asked, but that's actually not true. In support of the rest of the claim, Mr. Carlson expressly relies on a public securities and exchange filing of Community Bank, and that's 1403 in the record. This wasn't hidden. It was out there. Hold on just a second, Mr. Price. I know you're on the clock and I don't want to use up your time, but you've moved past something pretty quickly that I'd like to get you to hesitate on. Absolutely. You said that Riddle and previous things solved this. In their 28-J letter responding to your submission of Riddle, they assert that you are mischaracterizing their argument, that their argument is that there's an undisclosed entity that's getting these fees and performing no services at all. That's the heart of it, and that that is different in a distinction from these other cases that means Riddle and the precedential ones that are lying don't have any applicability. What's the error in their assertion about that? Well, they're wrong, Judge Jordan. Number one, that doesn't go at all to due diligence. That has nothing to do with due diligence. Due diligence is whether or not a plaintiff did anything other than take what a defendant espoused at face value, and their rejoinder to Riddle doesn't answer that question. Well, it seems to be that due diligence is context-specific, and when you've got somebody undisclosed, you wouldn't expect there's nothing more for them to be diligent about. That's that. That's their assertion back to us. It's not like they knew about something and could have looked into it. Nobody could have known about this is their assertion. Well, that's plainly not the case. For instance, where the title fees were concerned. They knew they were getting charged title fees. They were on the HUD ones. They knew there were title companies involved. They could have gone to the title companies and said, well, what are all these charges for? Why are you charging me $1,000 instead of $500? There was nothing stopping them from at least asking the question about, you're charging me a discount fee. Did I, in fact, get a discount off my interest rate? What are these other section 800 fees for? They could have asked the question, and this court, in all of those cases, expressly charges a plaintiff to ask the question. You've got to do something beyond simply accepting what the defendant says, and that is inherently individualized. And, again, equitable tolling is a rare and extraordinary remedy for a reason. It's not easy. I know your red light is on, but let me ask you this question also. You've appealed the class certification with the various questions you've raised here. Why should this question, in essence, the real question you have here, is whether or not the predominance issues demand individual versus common proof. And you've said, well, we should decide it here rather than send it back. And it also goes to, really, your question about conflict between counsel. Why should this be decided on a class certification question when you can raise these very questions through a motion for summary judgment, which was still available to you before district court? Well, Judge Fisher, this court has taken its duties to protect the absent class and to protect defendants in the class action context very seriously. That comes through crystal clear, going all the way back to at least hydrogen peroxide. This court has held that a class can't be conditionally certified subject to decertification. And, respectfully, I think that's, in effect, what you're suggesting. And, yes, we could move for summary judgment, but if this class should have never been certified in the first place, that's unfair to the absent class members. And, respectfully, this court has a duty, which it's taken very seriously in Carrera, hydrogen peroxide, et cetera, to the absent class members as well as to defendants. And this case simply doesn't meet the test. And, again, I could spend another 15 minutes here, Judge Fisher. I understand. I understand your answer. I understand your answer. Nothing. Okay. Thank you. We thank you, and we thank all counsel for a case that's been very well briefed. Thank you.